# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABDUL BROWN, | : | Civil No. 3:11-CV-1258 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge Kosik) |
| | : | |
| DORINA VARNER, et al., | : | (Magistrate Judge Carlson) |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.  Statement of Facts and of the Case

This is a civil rights action brought by Abdul Brown, a state inmate, against some 23 correctional supervisors and staff, arising out of a wide array of matters which Brown alleges occurred between October 2010 and April 2011, while Brown was housed in the Restricted Housing Unit of the State Correctional Institution, Frackville.  According to Brown's complaint, during this time he verbally abused; denied two meals in retaliation for grievances he filed; disciplined on a series of fabricated misconduct charges; had property confiscated without due process; was exposed to second hand tobacco smoke; was briefly placed in a strip cell without amenities, or running water after allegedly threatening staff by attempting to hurl human waste at them; and had his meal service restricted to food loaf, after he was accused of throwing feces and urine on staff.  (Doc. 1, ¶¶1-35.)  In his complaint

Brown sought damages totaling $500,000 from the defendants as recompense for these alleged constitutional infractions.

While the very general nature of Brown's complaints in his pleadings made it difficult to identify or assess potential liability among the more than 20 defendants named in this action, the parties proceeded to discovery, a process which has clarified the nature of Brown's allegations, and now informs the motion for summary judgment filed by the defendants relating to these disparate claims and multiple defendants. This summary judgment motion has been fully briefed by the parties and is now ripe for resolution.

For the reasons set forth below, it is recommended that the summary judgment motion be granted and this case dismissed.

## II.   Discussion

### A.   Rule 56–The Legal Standard

The defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56 (a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R.

Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment

is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995). This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment. With respect to such claims, it is well-settled that: "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial." Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n.2 (3d Cir. 2000),

citing Stelwagon Mfg. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275, n.17 (3d Cir. 1995). In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. See Buttice v. G.D. Searle & Co., 938 F.Supp. 561 (E.D.Mo.1996). Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage. Henry v. Colonial Baking Co. of Dothan, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005). Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment. Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate. See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the

denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple Univ., 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)). In particular, a plaintiff cannot avoid summary judgment by simply relying upon a self-declaration that he has authored which relies not on evidence, but on the plaintiff's own interpretation of events and, essentially, opinion testimony. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (the nonmoving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with the conclusory allegations of an affidavit."); Iseley v. Beard, No. 02-2006, 2009 U.S. Dist. LEXIS 52014, *32 (M.D. Pa. Mar. 30, 2010) (conclusory allegations contradicted by documentary evidence cannot be accepted as true).

Yet, while "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment," Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995), and "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions," Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), the court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. Under the Local Rules, the failure to follow these instructions and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it

affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in <u>Celotex Corp. v. Catrett</u>, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

<u>Doe v. Winter</u>, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis). A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See <u>Sanders v. Beard</u>, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); <u>Thomas v. Norris</u>, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## B. <u>The Defendants Are Entitled to Summary Judgment on Brown's Claims</u>

Guided by these legal benchmarks, we find that Brown's various claims fail, individually and collectively, as a matter of law since "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56 (a). These individual claims are discussed separately below:

### 1.    **Brown's Verbal Abuse Claims Are Unavailing**

At the outset, Brown alleges that one defendant, defendant Waters, verbally abused and harassed him.  (Doc. 1, ¶¶1-4.)  This claim merits only brief consideration since:  "It is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment.  <u>See</u> <u>McBride v. Deer</u>, 240 F.3d 1287, 1291 n. 3 (10th Cir.2001); <u>DeWalt v. Carter</u>, 224 F.3d 607, 612 (7th Cir.2000); <u>see also</u> <u>Boddie v. Schnieder</u>, 105 F.3d 857, 861 (2d Cir.1997) (rejecting the Eighth Amendment claim of a prisoner who alleged that he "was verbally harassed, touched, and pressed against without his consent" because "[n]o single incident that he described was severe enough to be 'objectively, sufficiently serious.' ")." <u>Robinson v. Taylor</u>, 204 F. App'x 155, 156 (3d Cir. 2006).  <u>See, e.g.</u>, <u>Rister v. Lamas</u>, 4:CV-10-1574, 2011 WL 2471486 (M.D. Pa. June 21, 2011); <u>Patterson v. Bradford</u>, CIV. 10-5043 NLH, 2011 WL 1983357 (D.N.J. May 20, 2011);  <u>Williams v. Bradford</u>, CIV. 10-5120 JBS, 2011 WL 1871437 (D.N.J. May 13, 2011);  <u>Ringgold v. Lamby</u>, 565 F. Supp. 2d 549, 553 (D. Del. 2008); <u>Sharpe v. Costello</u>, 1:06 CV 1493, 2007 WL 1098964 (M.D. Pa. Apr. 11, 2007).  Because Brown simply alleges that he was verbally harassed by Officer Waters, and given that it is "well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment," <u>Robinson v. Taylor</u>, 204 F. App'x 155, 156 (3d Cir. 2006), this verbal

harassment allegation fails to state a constitutional claim, and should be dismissed. Indeed, Brown himself concedes as much in his pleadings, effectively withdrawing this particular claim. (Doc. 69, p.3)

2. **Brown's Various Supervisory Liability Claims Fail as a Matter of Law**

In addition, discovery has revealed that a host of the defendants named in Brown's complaint were identified as defendants by Brown solely on the basis of some ill-defined notion of supervisory liability, or because Brown was displeased with the defendants' response to his past grievances. For example, in this case it appears that Brown premised his claims against defendants Collins (SMF ¶¶ 9-10), Damiter (SMF ¶¶19-20), Kovalchik (SMF ¶¶ 11-12), Lorady (SMF ¶¶ 13-14), Clark (SMF ¶¶ 15-16), Sheriff (SMF ¶¶ 21-22), and Rosato (SMF ¶¶ 36-37) based in large part upon a theory of *respondeat superior* liability. Further, Brown apparently seeks to impose personal liability against defendants Varner (SMF ¶¶ 3-4), Damiter (SMF ¶¶ 19-20), Collins (SMF ¶¶ 9-10), Snyder, Bretzik (SMF ¶¶ 5-6), and Rosato (SMF ¶¶ 36-37) based solely on their role in denying his past administrative grievances or appeals.

This he may not do. In considering claims brought against supervisory officials arising out of alleged constitutional violations, the courts recognize that prison supervisors may be exposed to liability only in certain, narrowly defined,

circumstances. At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison supervisors when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658,

691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also <u>Dunlop v. Munroe</u>, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); <u>Robertson v. Sichel</u>, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. <u>O'Connell v. Sobina</u>, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); <u>Neuburger v. Thompson</u>, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them.* <u>See</u> <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988)." <u>Jetter v. Beard</u>, 183 F. App'x 178, 181 (3d Cir. 2006)(emphasis added).

Here, in many instances Brown does little more than name a supervisory official in the caption of the case, and then seek to hold that official personally liable

based upon the official's supervisory status without making any specific factual allegations about these defendants in the body of this pleading. To the extent that Brown simply premises the liability of these defendants upon their supervisory status without setting forth any further factual basis for a claim in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of these defendants. Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)

Nor can Brown sustain a supervisory liability claim against these officials by simply alleging in a talismanic fashion that they failed to train, oversee or supervise their subordinate employees. In this regard, we note that: " 'Numerous courts, including this one, have expressed uncertainty as to the viability and scope of supervisory liability after Iqbal.' Santiago, 629 F.3d at 130 n. 8 (collecting cases); see also Argueta, 643 F.3d at 70." Bistrian v. Levi, 696 F.3d 352, 366 n. 5 (3d Cir. 2012). To the extent that supervisory liability survives after Iqbal, the scope of that liability is clearly and narrowly defined. As the United States Court of Appeals for the Third Circuit has observed: "'[t]here are two theories of supervisory liability' one under which supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm,' and another

under which they can be liable if they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.' <u>A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.</u>, 372 F.3d 572, 586 (3d Cir.2004) (second alteration in original)." <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 129 (3d Cir. 2010).

Brown cannot rely upon either of these theories of supervisory liability to support his current complaint. First, Brown has not alleged well-pleaded facts showing that "the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.' <u>A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.</u>, 372 F.3d 572, 586 (3d Cir.2004) (second alteration in original)." <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 129 (3d Cir. 2010). Moreover, there is no claim of supervisory liability here grounded upon an assertion that the defendants "established and maintained a policy, practice or custom which directly caused [a] constitutional harm," <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 129 (3d Cir. 2010)(emphasis added), since the plaintiff has not identified any policy of the Department of Corrections which directly led to the various injuries which he alleges that he has suffered. Quite the contrary, the plaintiff seems to suggest that the actions of the defendants violated Department of Corrections' policies.

Furthermore, to the extent that Brown's supervisory liability claims rest on the premise that officials did not after-the-fact act favorably upon his past grievances, this claim also fails. An inmate cannot sustain a constitutional tort claim against prison supervisors based solely upon assertions that officials failed to adequately investigate or respond to his past grievances. Inmates do not have a constitutional right to a prison grievance system. Speight v. Sims, 283 F. App'x 880 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). As the United States Court of Appeals for the Third Circuit observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of
> Corrections or Superintendents, were named only for their supervisory

roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

Indeed, as to such claims, the United States Court of Appeals for the Third Circuit has recently held that summary dismissal is appropriate "because there is no apparent obligation for prison officials to investigate prison grievances. See Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir.1973)." Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011). In sum, as presently drafted, the plaintiff's claims against these supervisory defendants consist of little more than assertions of *respondeat superior* liability, coupled with dissatisfaction with the processing of this inmate's past grievances, assertions which as a matter of law do not suffice to state a constitutional tort claim. Therefore, these defendants are entitled to be dismissed from this case.

### 3. Since Brown Had Access to Meaningful Post-Deprivation Remedies, His Property Loss Claims Fail

Furthermore, Brown's complaint alleges that prison officials confiscated his property without affording him due process. (Id., ¶¶8, 17-18.) However, Brown's

16

pleadings reveal that he used the grievance process at SCI Frackville to protest these takings, and in at least some instances, property was returned to him. (Id.)  On these facts, Brown's due process deprivation of property claim also fails since the undisputed facts reveal that the plaintiff had access to meaningful post-deprivation remedies, and in fact had much of his property retrieved by prison officials.

Inmate due process complaints arising out of property loss claims are judged against settled legal standards, standards which recognize that:

> Like other constitutional rights, the Due Process rights of prisoners may be accommodated to a prison's legitimate security needs.  See Bell v. Wolfish, 441 U.S. 520, 558-60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). [Therefore] "[A]n unauthorized intentional deprivation of property" by prison officials does not violate the Due Process Clause "if a meaningful postdeprivation remedy for the loss is available."  Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)(citing Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).  Predeprivation notice is not constitutionally required. See id.

Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008).

Thus, there are two crucial component to any inmate due process claim in this setting:  (1) the confiscation of property; *and* (2) an allegation that property was taken and the prisoner was afforded no post-deprivation administrative remedy.  It follows, then, that where a prison "provides an adequate post-deprivation remedy, see e.g. Tillman v. Lebanon County Corr. Fac., 121 F.3d 410, 422 (3d Cir.2000), . . . the existence of this post-deprivation remedy forecloses any due process claim, Austin

v. Lehman, 893 F.Supp. 448, 454 (E.D.Pa.1995), even if an inmate is dissatisfied with the result of the process. Iseley v. Horn, 1996 WL 510090, at * 6 (E.D.Pa.1996)." Rambert v. Beard, 4:CV-09-0634, 2012 WL 760619 (M.D. Pa. Mar. 7, 2012). Given the fact that Brown grieved the loss of this property and received some relief, we find that the defendants "provide[d] an adequate post-deprivation remedy, see e.g. Tillman v. Lebanon County Corr. Fac., 121 F.3d 410, 422 (3d Cir.2000) [and therefore conclude that] the existence of this post-deprivation remedy forecloses any due process claim, Austin v. Lehman, 893 F.Supp. 448, 454 (E.D.Pa.1995), even if an inmate is dissatisfied with the result of the process. Iseley v. Horn, 1996 WL 510090, at * 6 (E.D.Pa.1996)." Rambert v. Beard, 4:CV-09-0634, 2012 WL 760619 (M.D. Pa. Mar. 7, 2012). Since the undisputed evidence shows that meaningful post-deprivation remedies existed and were used by the plaintiff to recover some of his property, these undisputed factual matters "foreclose[] any due process claim, Austin v. Lehman, 893 F.Supp. 448, 454 (E.D.Pa.1995), even if an inmate is dissatisfied with the result of the process. Iseley v. Horn, 1996 WL 510090, at * 6 (E.D.Pa.1996)." Rambert v. Beard, 4:CV-09-0634, 2012 WL 760619 (M.D. Pa. Mar. 7, 2012).

### 4. Brown's Disciplinary Due Process and Retaliation Claims Fail

Brown's complaint also catalogued a series of disagreements the plaintiff had regarding various disciplinary citations and proceedings undertaken while he was in

state custody at SCI Frackville. Liberally construed, Brown's complaint alleges that these proceedings were based upon false accusations, that he was denied procedural due process, and that the hearings and that discipline was imposed upon him for improper retaliatory reasons. The undisputed record of these proceedings, however, reveals a substantial evidentiary basis for the accusations and disciplinary actions, in that Brown was found to have repeatedly threatened and attempted to throw feces and urine on staff. Furthermore, it appears that the sanctions imposed for these citations were largely limited to disciplinary housing restrictions, and did not otherwise implicate liberty interests of the plaintiff. On these facts, whether cast as due process violations, or as retaliation claims, these complaints fail as a matter of law.

At the outset, to the extent that Brown protests disciplinary proceedings which simply resulted in disciplinary custody determinations, his complaint stems from an erroneous legal premise, that placement in disciplinary segregation implicates a sufficient legal interest to trigger specific due process protections. In analyzing any procedural due process claim, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000) (citing Fuentes v. Shevin, 407 U.S. 67 (1972)). Once we determine that a property or liberty interest asserted is protected by the Due Process Clause, the question then becomes

what process is due to protect it. Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). However, in the case of prison inmates:

> [i]n Sandin v. Conner, the Supreme Court announced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by procedural due process guarantees. Although the Court acknowledged that liberty interests could arise from means other than the Due Process Clause itself, the Court concluded that state-created liberty interests could arise only when a prison's action imposed an '*atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life*.' . . . In finding that the prisoner's thirty-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Court considered the following two factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement.

Shoats, 213 F.3d at 143-44(citations omitted, emphasis added).

Applying these legal benchmarks, it has been held that disciplinary proceedings which result in sanctions of disciplinary segregation for six months or more do not impose atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life in similar situations, and, therefore, do not give rise to due process claims. Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002)(7 months disciplinary confinement). Therefore, as a threshold matter, to the extent that she advances a due process argument, Brown has not articulated a sufficient liberty interest to trigger a valid due process claim in this prison setting.

20

More fundamentally, in bringing constitutional claims against correctional officers arising out of these prison disciplinary hearings, Brown faces an exacting burden of proof. It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.

A prison disciplinary determination comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, it is well settled that disciplinary decisions are entitled to considerable deference by a

reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986). Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [hearing officer]." Freeman, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456.

Provided that a prisoner is afforded these due process protections during the disciplinary hearing process, it is well-settled that a claim that a misconduct report was false, standing alone, does not state a valid § 1983 cause of action. As the United States Court of Appeals for the Third Circuit has aptly observed: "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided. See, e.g., Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir.1986) (the filing of false charges does not constitute a

claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984)." Richardson v. Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007). See also Booth v. Pence, 141 F. App'x 66 (3d Cir. 2005); Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).

These principles also directly apply to inmate retaliation claims stemming from prison disciplinary proceedings. A prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights by filing a false misconduct report must prove the following three elements: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002). With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). While filing false misconduct reports may constitute the type of action that will, in certain cases, support a retaliation claim, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), in a prison discipline context, an inmate's retaliation claim will fail whenever the defendant shows that there is "some

evidence" to support the discipline citation. As the United States Court of Appeals for the Third Circuit has observed: "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings . . . . See Henderson v. Baird, 29 F.3d 464, 469 (8th Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." Nifas v. Beard, 374 F.App'x 241, 244 (3d Cir. 2010).

Here, while Brown complains about the process employed in these disciplinary hearings, the hearing records reveal that there was ample evidence to support those findings, which were typically based upon Brown's profane threats to douse staff in urine or throw feces at them. Furthermore, these records disclose that Brown was afforded his procedural rights but often waived those rights. Since "filing false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided. See, e.g., Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir.1986) (the filing of false charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984)" Richardson v. Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007), and "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings . . . . See Henderson v. Baird, 29 F.3d 464, 469 (8th Cir.1994) (stating that

24

a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)," <u>Nifas v. Beard</u>, 374 F. App'x 241, 244 (3d Cir. 2010), the substantial evidence supporting Brown's factual culpability on these disciplinary citations defeats his current claims, and compels dismissal of these claims.

## 5. <u>Brown Has Not Stated Any Other Viable Inmate Retaliation Claim</u>

Moreover, Brown broadly alleges that his treatment throughout his time at SCI Frackville was in some way retaliatory claims that rest, in large measure, on circumstantial evidence, with Brown asserting that the timing and chronology of these events are circumstantial proof of this retaliation. Brown faces a demanding burden of proof in attempting to allege such a retaliation claim based upon circumstantial proof. Inmates like Brown frequently invite courts to infer retaliatory motives to various prison policies and decisions. Yet, these invitations, while frequently made, are rarely embraced by the courts. <u>Compare</u> <u>DeFranco v. Wolfe</u>, 387 F. App'x 147 (3d Cir. 2010)(denying inmate cell transfer retaliation claim, two months temporal proximity insufficient); <u>Alexander v. Fitch</u>, No. 07-1732, 2010 WL 1257709 (W.D. Pa. March 26, 2010)(same); <u>Carpenter v. Kloptoski</u>, No. 08-2233, 2010 WL 891825 (M.D. Pa. March 10, 2010)(same); <u>Solan v. Ranck</u>, No. 06-49, 2007 WL 141918 (M.D.Pa. Jan. 18, 2007)(denying retaliation claim, in part); <u>with</u> <u>Curtician v. Kessler</u>,

No. 07-286, 2009 WL 2448106 (W.D. Pa. Aug. 7, 2009)(factual issues preclude dismissal of inmate cell transfer retaliation claim).

Rather, a prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights must first prove the following three elements: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002). With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). Examples of adverse actions that have, in certain cases, been found to support a retaliation claim include filing false misconduct reports, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), transferring a prisoner to another prison, Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001), and placing a prisoner in administrative custody, Allah, 229 F.3d at 225.

The third essential element to a retaliation claim is that there be a causal link between the exercise of a constitutional right and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333-34. To establish this third, and crucial, component

to a constitutional retaliation claim, causation, Brown must make an exacting

showing.  In this setting:

> To establish the requisite causal connection a plaintiff usually must
> prove either (1) an unusually suggestive temporal proximity between the
> protected activity and the allegedly retaliatory action, or (2) a pattern of
> antagonism coupled with timing to establish a causal link.  See Krouse
> v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.1997);
> Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir.1997).  In
> the absence of that proof the plaintiff must show that from the "evidence
> gleaned from the record as a whole" the trier of the fact should infer
> causation.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d
> Cir.2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Moreover, when examining these causation issues, we are specifically

admonished that:

> A court must be diligent in enforcing these causation requirements
> because otherwise a public actor cognizant of the possibility that
> litigation might be filed against him, particularly in his individual
> capacity, could be chilled from taking action that he deemed appropriate
> and, in fact, was appropriate.  Consequently, a putative plaintiff by
> engaging in protected activity might be able to insulate himself from
> actions adverse to him that a public actor should take.  The point we
> make is not theoretical as we do not doubt that public actors are well
> aware that persons disappointed with official decisions and actions
> frequently bring litigation against the actors responsible for the
> decisions or actions in their individual capacities, and the actors surely
> would want to avoid such unpleasant events.  Thus, it would be natural
> for a public actor to attempt to head off a putative plaintiff with the
> unwarranted expenditure of public funds.  Courts by their decisions
> should not encourage such activity and, by enforcing the requirement

that a plaintiff show causation in a retaliation case, can avoid doing so as they will protect the public actor from unjustified litigation for his appropriate conduct. In this regard we recognize that often public actors such as those in this case must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions.

Id. at 267-68.

Mindful of these concerns, courts have in the past carefully scrutinized inmate claims of retaliation premised solely on circumstantial proof of a temporal proximity between the plaintiff's conduct and allegedly retaliatory acts. Indeed, this Court has spoken directly to the issue of what must be shown to state a valid complaint in this factual context, noting that:

> To establish the causation element of a retaliation claim, a plaintiff must prove that his or her participation in a protected activity motivated the defendant to perform the retaliatory act. Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir.2002); Meenan v. Harrison, Civ. A. No. 3:03-CV-1300, 2006 WL 1000032, at *4 (M.D.Pa. Apr.13, 2006) (observing that a plaintiff must demonstrate that the exercise of First Amendment rights "played some substantial role" in the defendant's action). The temporal proximity of a retaliatory act to a plaintiff's exercise of his or her First Amendment rights is probative, but not dispositive, of the causation element. Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir.2003); see also Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir.1997) (stating that "temporal proximity merely provides an evidentiary basis from which an inference can be drawn"). For temporal proximity alone to establish causation, the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." Marasco, 318 F.3d at 512 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir.1997)) . . . [T]he Third Circuit Court of Appeals has suggested that a temporal proximity of two days is sufficient to establish causation, see Farrell v.

> Planters Lifesavers Co., 206 F.3d 271, 279 & n. 5 (3d Cir.2000), whereas a temporal proximity of ten days is sufficient to establish causation only when accompanied by other evidence of . . . wrongdoing, Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir.2003). This suggests that the temporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence.

Conklin v. Warrington Tp., No. 06-2245, 2009 WL 1227950, *3 (M.D.Pa. April 30,2009)

Applying this standard, courts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks, months or years separated the plaintiff's constitutionally protected conduct from the defendants' alleged acts of retaliation. Thus, "[o]ur sister courts have held that a temporal proximity of as little as seventeen days was insufficient to establish causation. See Killen v. N.W. Human Servs., Inc., No. 06-4100, 2007 WL 2684541, at *8 (E.D.Pa. Sept.7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish causation); see also Farrell, 206 F.3d at 279 n. 6 (suggesting that temporal proximity of seven weeks would be insufficient to establish causation); Smith v. ABF Freight Sys., Inc., No. 04-2231, 2007 WL 3231969, at *11 (M.D.Pa. Oct.29, 2007) (holding that temporal proximity of one and one-half months was insufficient to establish causation); Mar v. City of McKeesport, No. 05-19, 2007 WL 2769718, at *4 (W.D.Pa. Sept.20, 2007) (holding that temporal proximity of three months was insufficient to establish causation)." Fischer v. Transue, 04-2756, 2008

WL 3981521, *10 (M.D.Pa. Aug. 22, 2008)(holding that temporal proximity of three weeks was insufficient to establish causation).

In practice, application of these legal tenets has often led to the rejection of retaliation claims as legally insufficient when those claims are like the retaliation assertion made here: An assertion of retaliation based solely on circumstantial proof of some temporal link between the plaintiff's conduct and the defendants' actions when the evidence shows no strongly suggestive temporal link between these wholly disparate events. See, e.g., DeFranco v. Wolfe, 387 F. App'x 147 (3d Cir. 2010) (denying inmate cell transfer retaliation claim, two months temporal proximity insufficient); Bailey v. Commercial National Insurance Co., 267 F. App'x, 167 (3d Cir. 2008)(employment discrimination-retaliation case, four months temporal proximity insufficient); Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir.1997) (3-month period insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir.1992) (4-month period insufficient); Conklin v. Warrington Tp., No. 06-2245, 2009 WL 1227950 (M.D.Pa. April 30, 2009)(two months temporal proximity insufficient); Rogers v. Delaware, Dept. of Public Safety/DMV 541 F.Supp.2d 623, 627 (D.Del. 2008)(10 months insufficient); Brown v. Boeing, 468 F.Supp.2d 729 (E.D.Pa. 2007)(3-4 months insufficient); Lumban-Tobing v. Potter, No. 04-979, 2005

WL 2100691 (M.D. Pa. Aug. 30, 2005)(9 months insufficient temporal proximity, but other proof creates factual issue precluding summary judgment).

This case aptly illustrates the limitations which the law imposes upon those like Brown who wish to tie disparate events, committed by different actors, together into a seamless web of retaliation. Recognizing that we "must be diligent in enforcing these causation requirements" of a retaliation claim, Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267-68 (3d Cir. 2007), the undisputed evidence in this case simply does not permit any reasonable inference of a causal relationship between the events described by Brown since Brown completely fails to articulate in an intelligible fashion any temporal link between the various events which he describes. In the absence of some coherent temporal and causal link these claims fail.

### 6.      Brown's Eighth Amendment Claims Also Fail

Brown also advances what, liberally construed, may be Eighth Amendment condition of confinement claims, alleging that he missed occasional meals during the time period when it was alleged that he was threatening to hurl human waste on staff who approached his cell, and protesting that he was briefly detained in a cell without full amenities during this period as well. In conducting a legal analysis of these claims we must be mindful of the constitutional standards which govern Eighth Amendment claims generally. These Eighth Amendment claims are judged against

settled legal principles, principles which set precise and exacting standards for asserting a constitutional infraction. All of the various claims, however, are governed by the same overarching and animating constitutional benchmarks. As the United States Court of Appeals for the Third Circuit has observed:

> The Eighth Amendment protects against infliction of "cruel and unusual punishment." However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Id. (citation and internal quotations omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id.

> Resolution of an Eighth Amendment claim therefore "mandate[s] an inquiry into a prison official's state of mind." Wilson v. Seiter, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Two considerations define that inquiry. We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. Id. at 298, 111 S.Ct. 2321. If not, our inquiry is at an end. However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind. Id. In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain. "What is necessary to establish an 'unnecessary and wanton infliction of pain ...' varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Fuentes v. Wagner, 206 F.3d 335, 344-45 (3d Cir. 2000)

With these tenets in mind we turn to a consideration of the individual Eighth Amendment claims advanced here. "When an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with 'deliberate indifference' to the inmate's health. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities.' Hudson, 503 U.S. at 9, 112 S.Ct. 995." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000). In this setting, it is clear that:

> The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)). Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)

Atkinson v. Taylor, 316 F.3d 257, 272 (3d Cir. 2003).

Thus, these claims also require proof of a both culpable state of mind, and objective proof of physical conditions of confinement which shock the conscious and depart from minimal civilized standards of life's necessities. Moreover, when courts have in the past considered specific conditions of confinement alleged by inmates under this Eighth Amendment standard, it is apparent that many of the complaints advanced by Brown have been found not to "deprive inmates of the minimal civilized measure

of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347(1981). For example,"[p]ursuant to the case law related to the denial of bedding, the denial of [an inmate's] mattress for a short period of time does not rise to the level of a constitutional violation." Milhouse v. Gee, No. 09-2134, 2011 WL 3627414, *13 (M.D.Pa. Aug. 17, 2011) citing Lane v. Culp, Civ. No. 05–576, 2007 WL 954101 (W.D.Pa. Mar.28, 2007) (holding that denial of clothing and bedding for period of seven days does not rise to level of constitutional violation); Castro v. Chesney, Civ. No. 97–4983, 1998 WL 767467 (E.D.Pa. Nov. 3, 1998) ("Plaintiff's allegation that he was deprived of a mattress and blanket for a period of two days, even if proved, would not rise to the level of a constitutional violation."); Stephens v. Cottey, 145 F. App'x 179, 181 (7th Cir. Aug.11, 2005) (holding no Eighth Amendment violation exists where prisoner spent three days without a mattress sleeping on a metal bedframe and five days with no bedframe sleeping on the floor).

Similarly, courts have frequently rebuffed inmate complaints like those made here relating to the packaging and presentation of meals. Thus, "while prisoners are guaranteed a nutritionally adequate diet under the Eighth Amendment, see Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir.1980), there is no constitutional right to hot meals. See Brown-El v. Delo, 969 F.2d 644, 648 (8th Cir.1992) (finding frivolous prisoner's claim that his constitutional rights were violated when he was served cold

food)." Laufgas v. Speziale, 263 F. App'x. 192, 198 (3d Cir. 2008). Thus, the "purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation. See Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir.1983) (only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim)." Lindsey v. O'Connor, 327 F. App'x. 319, 321 (3d Cir. 2009). Furthermore, court have held that a brief interruption in water service to an inmate's cell does not, by itself, so deprive an inmate of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347(1981), that it constitutes an violation of the Eighth Amendment. Banks v. Mozingo, 423 F. App'x 123, 127-28 (3d Cir. 2011), citing Williams v.Delo, 49 F.3d 442, 444–47 (8th Cir.1995) (finding no Eighth Amendment violation where prisoner was placed in a strip cell without clothes, the water in the cell was turned off and the mattress removed, and prisoner's bedding, clothing, legal mail, and hygienic supplies were withheld).

Finally, courts have repeatedly held that inmate Eighth Amendment claims, like those made here, which rest upon a brief alleged failure to provide personal hygiene supplies to a prisoner do not state a claim under the Eighth Amendment. See e.g., Banks v. Mozingo, 423 F. App'x 123 (3d Cir. 2011)(denying inmate hygiene complaint as ironic where inmate engaged in un-hygienic behavior, including smearing feces on cell); Adderly v. Ferrier, 419 F. App'x 135 (3d Cir. 2011)(denying

inmate claim involving 7 day alleged denial of hygienic material); <u>Fortune v. Hamberger</u>, 379 F. App'x 116 (3d Cir. 2010)( denying inmate claim involving 15 day alleged denial of hygienic material); <u>Benjamin v. Fraser</u>, 161 F.Supp.2d 151, 177 (S.D.N.Y.2001) (two days without feminine hygiene products and toilet paper did not establish a constitutional violation); <u>Stead v. Skinner</u>, 10-4526, 2011 WL 3882809, *4 (N.D.Ill., Sept 2, 2011).

Thus, to the extent that Brown lodges specific condition of confinement claims against these individual defendants those claims all relate to matters which do not rise to the level of a deprivation of "the minimal civilized measure of life's necessities." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981). Therefore, these particular Eighth Amendment claims fail as a matter of law, and it is recommended that these claims be dismissed.

> **7.** **All Claims Against Current and Former Board and Department Officials in their Official Capacities Should Be Dismissed for Failure to State a Claim**

Further, any claims brought under 42 U.S.C. § 1983 against the Commonwealth of Pennsylvania, its agencies, or officials sued in their official capacities also fail as a matter of law. The Supreme Court and the Third Circuit Court of Appeals have long instructed that state officials may not be sued in their officials capacities in federal court under 42 U.S.C. § 1983, as such suits are in effect

suits against the state itself, which enjoys sovereign immunity. See <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985); <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974); <u>Laskaris v. Thornburgh</u>, 661 F.2d 23, 26 (3d Cir. 1981).  Moreover, a suit against a state official in that person's official capacity is, in effect, a suit against the official's office.  <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989).  Viewed in such a way, the Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  <u>Id.</u>  Accordingly, the plaintiff's claims against the Commonwealth and the individual Commonwealth defendants in their official capacities should be dismissed as barred by the Eleventh Amendment, and because these defendants may not be sued under § 1983 in their official capacities.

### 8.    Brown's Environmental Tobacco Smoke Claims Fail

Finally, in his complaint, Brown alleges that he was exposed to "heavy" tobacco smoke from February through May 2011.  (Doc. 1, ¶¶23-26.)  Brown alleges that he complained about the smoke, but does not state who received these complaints, or who was responsible for addressing the complaints, beyond alleging that the defendants shared "executive duties" to correct this problem.  (Doc. 69, p.5.)  Further, Brown cites no medical evidence of injuries that he suffered as a result of this alleged three month exposure to environmental tobacco smoke.  Indeed, Brown

affirmatively stated that he did not seek any medical treatment, (Doc. 55, Ex. A, p.44.), and the record is devoid of any evidence of physical injuries to Brown, beyond the assertions made by Brown in his complaint. Moreover, a review of Brown's grievances on this topic, which have been provided by the defendants, reflects that his concerns were taken seriously and addressed on their merits. Thus, prison officials advised Brown that smoking was permitted only in isolated locations within the prison, and informed him that persons who violated the prison's no-smoking policy were subject to citation and disciplinary sanctions. (Doc. 55 ex. B and C.)

To state a claim based on involuntary exposure to environmental tobacco smoke,(ETS), a plaintiff must prove "(1) exposure to unreasonably high levels of ETS contrary to contemporary standards of decency; and (2) deliberate indifference by the authorities to the exposure to ETS." Helling v. McKinney, 509 U.S. 25, 35-36 (1993); Atkinson v. Taylor,316 F.3d 257, 262 (3d Cir. 2003). Thus, where an inmate-plaintiff produces no medical evidence of injury resulting from ETS exposure, and the facts disclose that prison officials were responsive to the inmate's second-hand smoke complaints, those claims fail as a matter of law on summary judgment. See Panton v. Nash, 317 F. App'x 257, 259 (3d Cir. 2009); Keyes v. Chamberlin, CIV.A. 09-566, 2011 WL 113445 (W.D. Pa. Jan. 13, 2011)(citing, Slaughter v. Rogers, Civil No. 10–2911, 2010 WL 4016981, 2 (3d Cir. Oct. 14, 2010)).

Here, Brown's environmental tobacco smoke claims fail for at least three reasons:  First, Brown does not identify any personally culpable defendants.  Second, Brown does not present proof of any present injury as a result of ETS exposure.  Third, Brown does not show deliberate indifference to his needs given the responsiveness displayed by prison officials, and their adherence to the Department of Corrections no-smoking policies.  Therefore, this claim should also be dismissed.  Panton v. Nash, 317 F. App'x 257, 259 (3d Cir. 2009); Keyes v. Chamberlin, CIV.A. 09-566, 2011 WL 113445 (W.D. Pa. Jan. 13, 2011)(citing, Slaughter v. Rogers, Civil No. 10–2911, 2010 WL 4016981, 2 (3d Cir. Oct. 14, 2010)).

## D.    The Defendants Are Entitled to Qualified Immunity

But even if Brown had alleged a colorable constitutional claim, his prayer for damages still fails because the defendants are entitled to qualified immunity.  In order to establish a civil rights claim the plaintiffs must show the deprivation of a right secured by the United States Constitution or the laws of the United States.  Satisfying these elements alone, however, does not guarantee that the plaintiffs are is entitled to recover damages from these public officials.  Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson

v. Callahan, 555 U.S. 223 (2009). This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit." Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted). Qualified immunity:

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries. First, the court must evaluate whether the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson, 555 U.S. 223; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor. Saucier, 533 U.S. at 201. If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted. Pearson, 555 U.S. at 232; Saucier, 533 U.S. at 201-

02.  The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right.  <u>Williams</u>, 455 F.3d at 191 (citing <u>Saucier</u>, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." <u>Wilson</u>, 526 U.S. at 615.  The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002) (quoting <u>United States v. Lanier</u>, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." <u>Wilson</u>, 455 F.3d at 191 (quoting <u>Hope</u>, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, <u>Pearson</u>, 555 U.S. at 239-40, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted.  <u>Id.</u>  Where a court elects to address the alleged constitutional violations, however, the court's

analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).") Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment. See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010). Moreover, "'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established *statutory or constitutional* rights of which a reasonable person would have known.' Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (citation and internal quotations omitted)." Diana v. Oliphant, 441 F. App'x 76, 79 (3d Cir. 2011) cert. denied, 132 S. Ct. 1557, 182 L. Ed. 2d 166 (U.S. 2012)(emphasis added.). Therefore, this doctrine would apply to both federal statutory and constitutional claims. Id.

Here, we can find that Brown's complaints regarding environmental tobacco smoke, verbal harassment, supervisory liability, disciplinary due process and retaliation, and the conditions of his confinement all are flawed in various ways. Given the manifest legal flaws inherent in these claims, it follows that the defendants are entitled to qualified immunity in this case since nothing in case law could have alerted these officials that their actions violated "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999)

### III.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED, that the defendants motion for summary judgment (Doc. 54.) be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however,

need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 22nd day of July 2013.

***<u>S/Martin C. Carlson</u>***
Martin C. Carlson
United States Magistrate Judge